134 F.3d 375
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Cindy TURNER, Defendant-Appellant.
 No. 97-2958.
 United States Court of Appeals, Seventh Circuit.
 Argued Dec. 16, 1997.
Decided Jan. 12, 1998.
 
 Before ESCHBACH, FIAUM, and EVANS, Circuit Judges.
 
 ORDER
 
 1
 GILBERT, Chief Jude.
 
 
 2
 Cindy Turner was sentenced to 188 months imprisonment following conviction, after a jury trial, of possessing methamphetamine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1). On appeal Turner argues that the district court clearly erred in applying an improper averaging method to calculate the amount of methamphetamine attributable to Turner for sentencing purposes. Turner also claims that the district court used unreliable statements from Jeffrey Devin, one of Turner's customers and an admitted drug addict, in its calculations.
 
 
 3
 The district court calculated that the amount of methamphetamine attributable to Turner for sentencing purposes was over 3,000 grams. resulting in a base offense level of 34. Based on Turner's criminal history category of I, the court set Turner's imprisonment range at 151 to 188 months. The court found that Turner was "the major player in financing and providing the wherewithal for the distribution of methamphetamine" and sentenced her to a term at the top of the range, 188 months.
 
 
 4
 We review the district court's determination of the amount of methamphetamine included in Turner's offense level for clear error. United States v. Earnest, No. 97-1222, 1997 WL 706762, * 9 (7th Cir. Nov. 14, 1997). At the sentencing hearing the government was required to establish the amount of drugs attributable to Turner by a preponderance of the evidence. United States v. Miner, 127 F.3d 610, 613 (7th Cir.1997). "We will reverse the district court's calculation of the quantity of drugs involved only if we have a 'firm and definite conviction that a mistake has been made.' " Id. at 614-15 (quoting United States v. Corral-Ibarra, 25 F.3d 430, 437 (7th Cir.1994)).
 
 
 5
 Turner argues that Devin's testimony regarding drug quantities, dates, and the number of trips he took to purchase drugs is unreliable because it is inconsistent and because he admitted that he was confused about the dates of his drug purchases. Following Devin's arrest he told an agent for the Federal Bureau of investigation that he had purchased from Turner an eighth to a quarter of a pound[1] of methamphetamine weekly for approximately 2 years. However, when Devin testified at Turner's trial he claimed to have purchased significantly less quantities ofmethamphetamine from her than the amounts he previously had told the FBI agent. The district court used Devin's own sentencing hearing as an opportunity to question him regarding the disparity between these quantities. Devin admitted that he was still confused about the time frame of his various purchases and was able to offer only general quantities that he purchased and approximate time frames in which these purchases occurred. Devin's testimony should be subject to extra scrutiny, Turner argues, because he is an admitted drug user. United States v. Beler, 20 F.3d 1428, 1435 (7th Cir.1994).
 
 
 6
 A court may rely on one of two contradictory statements in calculating a defendant's base offense level, provided it "directly address[es] the contradiction and explain[s] why it credits one statement rather than the other." United States v. Acosta, 85 F.3d 275, 282 (7th Cir.1996) (quoting United States v. Duarte, 950 F.2d 1255, 1266 (7th Cir.1991)). Here, the district court had the opportunity to hear Devin's testimony at trial and to question him at his sentencing hearing. The district court is best positioned to assess a witness's reliability regarding the estimated number of purchases because it has the benefit of viewing the witness's testimony. United States v. Singleton, 125 F.3d 1097, 1108 (7th Cir.1997), See also Earnest, 1997 WL 706762 at * 8. Based on an examination of Devin's various statements. the district court determined that, at a minimum, his testimony supported a finding that his relevant conduct was close to 700 grams, even though the court noted that the amount was probably closer to several thousand grams. The court also stated that it did not consider Devin's statements to the FBI agent and that it discounted instances where it believed that Devin inadvertently referred to pounds rather than ounces. Where a district court uses conservative estimates, "[t]his process of 'discounting' the estimates takes into account the possibility that drug use and other factors may have adversely affected perception and memory." United States v. Taylor, 72 F.3d 533, 544 (7th Cir.1995).
 
 
 7
 Turner also argues that the district court used an improper "averaging method" in calculating the total drug quantities and failed to state the specific formula that it used in its calculations. This argument is not tenable in light of the district court's detailed findings regarding how it calculated the drug quantities and how it arrived at the offense level and sentence imposed. Singleton, 125 F.3d at 1109. The court acknowledged, but rejected, Turner's argument from her initial sentencing hearing that the methamphetamine attributable to her should total less than 3,000 grams, for a base offense level of 32. The judge tried various calculations, but the lowest total he could calculate was 3,265 grams. The court also noted that this figure was far below the total amount of 11,000 grams that was supported by some of the trial testimony. The court also set forth the various figures upon which it relied to support its finding that Devin's relevant conduct was close to 700 grams. Referring to specific portions of Devin's testimony given at his sentencing hearing, the district court calculated that Devin purchased, as a "very conservative" amount, the following: 5.2 grams for 40 weeks (208 grams); 170 grams that he had in his possession when he was arrested; sixteen purchases of half ounces (224 grams); and one and a half ounces from his trips to Indiana (42 grams).
 
 
 8
 The district court's multiplication of the minimum number of Devin's purchases by the smallest amount of methamphetamine that he purchased to determine the total amount of methamphetamine attributable to him is a method that this court has considered acceptable. See Acosta, 85 F.3d at 282. The method employed by the district court was not an improper "averaging method," as Turner argues, but is an accepted method by which to estimate the total drug quantity. United States v. James, 113 F.3d 721, 731 (7th Cir.1997) (A court must avoid "nebulous eyeballing," but "factual determinations under the Guidelines need not emulate the precision of Newtonian physics.") (citing Duarte, 950 F.2d at 1265)
 
 
 9
 As stated in United States v. Wade, 114 F.3d 103, 105 (7th Cir.), cert. denied, 118 S.Ct. 238 (1997), "[t]he task on appeal is not to see whether there is any view of the evidence that might undercut the district court's finding; it is to see whether there is any evidence in the record to support the finding." The district court's findings regarding the amount of drugs attributable to Devin are based on very conservation interpretations of Devin's testimony at his sentencing hearing and at trial, and the district court specifically referred to this testimony in making the calculations upon which Turner's sentence was based. Therefore, the district court's calculation of the amount of methamphetamine included in Turner's offense was not clearly erroneous.
 
 
 10
 Even if the district court committed clear error in calculating the amount of drugs attributable to Devin (which it did not), this error would not have affected Turner's sentence and therefore is harmless. United States v. Benitez, 92 F.3d 528. 539 (7th Cir.1996). Turner does not argue that the district court erred in calculating the amounts attributable to other sources. These amounts total 2,697.9 grams before any amount attributable to Devin is added. At her initial sentencing hearing Turner suggested that the amount attributable to Devin was 408 grams, which she admits is the lowest possible amount attributable to him Had the district court accepted Turner's suggested amount attributable to Devin, the total amount of drugs attributable to Turner for sentencing purposes would have been 3,105.9 grams, resulting in the same offense level of 34.
 
 
 11
 For the foregoing reasons, we AFFIRM the sentence imposed by the district court.
 
 
 
 [1]
 The district court assumed that Devin meant "ounce" rather than "pound."